UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM LaMAR BURRELL<br>Plaintiff | CIVIL NO._____ |
| V. | March 15, 2021 |
| ANGEL QUIROS;<br>ROBERT MARTIN;<br>INGRID FEDER, M.D.;<br>YVONNE MARCEAU, A.P.R.N.;<br>KARA PHILLIPS, R.N.;<br>JANINE BRENNAN, R.N.:<br>MICHELLE KING<br>Defendants<br>(All defendants are sued in<br>their official and individual<br>capacities) | **JURY TRIAL REQUESTED** |

<u>VERIFIED   COMPLAINT</u>

<u>Introduction:</u> This is a civil rights complaint filed by the plaintiff, **William LaMar Burrell,** an Oregon state prisoner housed in the State of Connecticut at all times relevant to this Complaint pursuant to the Interstate Corrections Compact.

This Complaint raises claims of violations of the plaintiff's rights, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, as related to deliberate indifference to serious medical needs, the First and Fourteenth Amendments to the United States Constitution, as related to the right to seek redress and the right to court access, and the Fourteenth Amendment to the United States Constitution, as related to claims of Equal Protection violations.

This Complaint is filed pursuant to the provisions of **42 U.S.C.§1983 and 42 U.S.C.§1985(3),** alleging the actions and/or inactions of the defendants, both in policy and in practice, did cause serious physical injury to the plaintiff and are reasonably calculated to cause further injury without intervention by this Honorable Court, as articulated below.

Additionally, having raised colorable claims of federal civil rights violations the plaintiff will be asking this Court to exercise its discretionary authority to hear associated State Law claims, as permitted by **28 U.S.C.§1367**.

**SECTION I. CONSTITUTIONAL CLAIMS:**

This is a civil rights complaint being brought in United States District Court by a state prisoner alleging;

A. That the pattern of deliberate indifference to the serious medical needs of Connecticut state prisoners, especially at the Corrigan Correctional Center (Hereinafter "Corrigan"), are so widespread and systemic that the only plausible explanation for this ongoing indifference is the tacit approval of the Commissioner of Correction, who, evidence will show, has been put on notice many times of the disaster that is Corrigan medical services, and has made an informed decision to allow this systemic indifference to continue.

While acknowledging that the doctrine of respondeat superior is not applicable to suits brought pursuant to 1983, Commissioner Quiros is named as a defendant for two (2) reasons:

   1. Evidence will show that Defendant Quiros knew or should have known of the chronic, systemic failings of the Corrigan Medical Department and chose to do nothing, ultimately leading to the set of circumstances described herein where the plaintiff was severely and avoidably injured, thereby violative of the **Eighth Amendment to the United States Constitution**, and,

   2. The plaintiff, having raised colorable constitutional claims, asks the Court to exercise supplemental jurisdiction to hear State law claims, for which the doctrine of respondeat superior does apply, as articulated below.

B. That Defendant Robert Martin, in his capacity as warden of the Corrigan Correctional Center;

   1. Failed to enact the official policy of the Connecticut Department of Correction (Hereinafter "CTDOC") as related to prisoners avenue for seeking medical attention. Specifically, as the warden at Corrigan, Defendant Martin was obligated to ensure that the **"Prompt Care"** system, described below, was enacted at Corrigan. As a direct result of this defendant's failure to act the plaintiff was severely injured. This indifference is violative

**CONT.**

        ... of the **Eighth Amendment to the United States Constitution.**

2. Acted in concert with Corrigan medical personnel to delay, deny and chill plaintiff's seek of medical attention and/or redress by, in some cases, refusing to respond to plaintiff's repeated oral and written pleas for assistance (as described below) and in others providing responses which merely "reset" the time frames for the defendants to "respond" to said requests for medical attention which the defendants had thusfar failed to respond to in a timely manner. Defendant Martin's actions and/or inactions were clearly intended to provide cover to his subordinates and resulted in further, unnecessary injury, pain and suffering to the plaintiff. Defendant Martin conspired with his medical personnel in a way that deprived the plaintiff of adequate medical treatment, violative of **42 U.S.C.§1985.**

C. That Defendant Ingrid Feder, M.D. in her capacity as the plaintiff's primary care provider at Corrigan;

  1. Has refused, and continues to refuse, to follow the post-op orders of the plaintiff's neurosurgeon as related to the plaintiff's need for physical therapy, without cause, resulting in further, unnecessary injury, pain and suffering to the plaintiff, violative of the **Eighth Amendment to the United States Constitution.**

  2. Has openly admitted to the plaintiff her intent to make the plaintiff's seeking redress from the courts as difficult as possible (as described below), in violation of the **First and Fourteenth Amendments to the United States Constitution.**

D. That Defendant Yvonne Marceau, in her capacity as the plaintiff's A.P.R.N. Care Provider;

  1. Has refused to order the physical therapy ordered by the plaintiff's neurosurgeon to treat the injuries brought about by the plaintiff's aneurism (i.e. difficult walking, limb numbness, slurring of speach, etc. ) without cause, resulting in further injury, pain and suffering to the plaintiff, violative of the **Eighth Amendment to the United States Constitution..**

    2.    Failed to perform even basic triage of plaintiff during episode that ultimately led to two (2) emergency brain surgeries on the plaintiff (as described below), causing the plaintiff, during a time of extreme physical and psychological distress, to fear for his life, resulting in a significant increase in heart rate and blood pressure, at a time when doing so likely led to additional, unnecessary bleeding of the brain and. consequently, injury , pain and suffering to the plaintiff, violative of the **Eighth Amendment to the United States Constitution.**

E.  That Defendant Kara Phillips, in her capacity as the Nursing Supervisor (A.K.A. Head Nurse) at Corrigan,

    1.    Failed to implement the CTDOC "Prompt Care" policy, which resulted in unnecessary delay of treatment to the plaintiff, as described below. This defendant, having full knowledge that the CTDOC, at the direction of the Connecticut State Legislature, enacted the "Prompt Care" system to address serious, well publicised deficiencies in the CTDOC medical system, chose, and continues to choose, not to implement this CTDOC policy at Corrigan, showing wanton indifference to prisoner's medical needs, which is directly attributable to the delay of care which caused unnecessary injury, pain and suffering to the plaintiff, violative of the **Eighth Amendment to the United States Constitution.**

    2.    After having become aware of the systemic failures of Defendant Janine Brennan, R.N., a Corrigan employee directly under Defendant Phillips' supervision;

        i. Acted in concert with Defendant Brennan to deter prisoners from seeking medical treatment, violative of **42 U.S.C.§ 1985** and the **Eighth Amendment to the United States Constitution.**

        ii. Acted in concert with Defendant Brennan to frustrate and chill the plaintiff's right to seek redress from the courts, as guaranteed by the **First Amendment to the United States Constitution**, thereby violative of the provisions of **42 U.S.C.§1985.**

Pg. 4

**F.** That Defendant Janine Brennan, in her capacity as the medical administrative coordinator for the Corrigan Correctional Center;

1. Will be shown by a substantial volume of documentary evidence to have engaged in a pattern of behavior clearly designed to frustrate, delay and/or deny the plaintiff's (and many other prisoners) right to seek medical treatment, violative of the **Eighth Amendment to the United States Constitution.**

2. Will be shown by a substantial volume of documentary evidence to have engaged in a pattern of behavior clearly designed to chill prisoner's right to seek redress from the courts, as guaranteed by the **First and Fourteenth Amendments to the United States Constitution.**

3. Has acted in concerted with defendants in this case, and with other parties not yet known, to deprive prisoners such as the plaintiff with the constitutional rights outlined above, in violation of **42 U.S.C.§1985.**

**G.** That Defendant Michelle King, in her capacity as the Administrative Remedy Coordinator at Corrigan;

1. Will be shown by a substantial volume of documentary evidence to have engaged in a pattern of behavior clearly designed to frustrate, delay and/or deny the plaintiff's (and many other prisoners) right to seek medical treatment, violative of the **Eighth Amendment to the United States Constitution.**

2. Will be shown by a substantial volume of documentary evidence to have engaged in a pattern of behavior clearly designed to chill a prisoner's right to seek redress from the courts, as guaranteed by the **First and Fourteenth Amendments to the United States Constitution.**

3. Has acted in concert with defendants in this case, and with other parties not yet known, to deprive prisoners such as the plaintiff with the constitutional rights outlined above, in violation of **42 U.S.C.§1985.**

**SECTION II. SUPPLEMENTAL JURISDICTION:**

The plaintiff respectfully requests the Court exercise Supplemental Jurisdiction over the following related state law claims, in conjunction with the Constitutional claims outlined in Section I above;

1. The defendant's falsification of medical records was;

    **a. Professional Malpractice** as codified by State Statute, as related to Defendant Feder

    **b. Conduct Which Fails to Conform to Accepted Standards,** per **Conn.Gen.Stat. §20-12f**, as related to Defendant A.P.R.N. Marceau.

    **c. Conduct Which Fails to Conform to Accepted Standards,** per **Co..Gen.Stat. §20-99(b)(7)**, as related to defendants Kara Phillips, R.N. and Janine Brennan, R.N. .

2. The defendants acted jointly and/or severally to deprive the plaintiff of Equal Protection of the Law, in violation of **Article First, Section 20 of the Connecticut Constitution.**

3. The defendants' actions and/or inactions were, at the very least, **Negligent**, resulting in serious injury, pain and suffering to the plaintiff, as per **Conn.Gen.Stat. §52-572h**

**SECTION III. PREVIOUS SUITS OR ACTIONS:**

1. The plaintiff has not had any suits or actions filed in any United States Court dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted.

2. The plaintiff has not filed any claim, suit or controversy before any court which relies upon the same facts as those asserted herein.

**SECTION IV, STATEMENT OF FACTS:**

**1.** Sections I, II and III above are hereby incorporated into Section IV Statement of Facts, as if fully pleaded herein.

**2.** In late August of 2020 the plaintiff began experiencing severe headaches, lethargy and blurred vision while housed at the Corrigan Correctional Center in Uncasville, Connecticut.

**3.** After having attempted unsuccessfully to speak to Corrigan medical personnel when they (Usually Nurses) came to the plaintiff's housing unit to pass out medication, the plaintiff sent an Inmate Request Form to Corrigan Medical on or about September 09, 2020, alerting said medical staff of;
* A headache that had lasted over a week
* Pain in plaintiff's eyes
* Nausea
* Loss of appetite

**4.** In the request described above at #3, the plaintiff ended by stating "I really need to see a doctor ASAP!"

**5.** On or about September 10, 2020, having received no response to the emergency request for help referenced above at #3-4, the plaintiff sent another Inmate Request Form to Corrigan Medical, restating his urgent need for medical attention.

**6.** All requests sent by the plaintiff to medical personnel as related to this Complaint were deposited in the Unit Medical Box, affixed to a wall within the plaintiff's housing unit.

**7.** Per policy, all papers deposited in a unit medical box are to be retrieved daily by assigned medical staff.

**8.** To date, the plaintiff has received no response to the Inmate Request dated September 09, 2020, described at #3-4 above.

**9.** The response by an as yet unidentified individual to the plaintiff's Inmate Request dated September 10, 2020 pleading for emergency medical attention was literally a rubber stamp which stated "Your name has been added to the RN sick call list."

**10.** Per Department policy, the Connecticut Department of Correction employs "Prompt Care" at all CTDOC facilities, except for Corrigan.

**11.** The Prompt Care system was promulgated and instituted in response to widely publicized findings of systemic medical neglect and indifference at several Connecticut correctional institutions (Including Corrigan) which led to serious injury and death of several Connecticut prisoners.

12. The basic premise of the Prompt Care system is that prisoners requiring "prompt care" should be seen and evaluated within 24 hours of signing the Prompt Care sign up sheet, posted in each CTDOC housing unit.

13. Corrigan, to the best knowledge of the plaintiff, is the only CTDOC facility/compound (Corrigan-Radgowski) that refuses to implement the CTDOC mandated Prompt Care system.

14. During his stay at Corriganthe plaintiff asked Defendant Kara Phillips why Corrigan has no Prompt Care, to which Nurse Phillips replied "We don't have the staff for that".

15. Defendant Martin, as the warden of the Corrigan Correctional Center, knew or should have known that department level policy (Prompt Care) was not, and to date is not, being followed at his facility.

16. Defendant Phillips, as the Nursing Supervisor at Corrigan, knew or should have known that the CTDOC mandated Prompt Care system was not, and to date is not, being employed in the medical unit she supervises.

17. To the best of the plaintiff's knowldge, Corrigan has received no exception to the CTDOC mandate to employ the Prompt Care system at all CTDOC facilities.

18. As described below, their is broad medical consensus that the delay in treatment to a brain bleed (anuerism) is severe, generally irreparable and often fatal.

19. On or about September 14, 2020, some two (2) weeks after initially verbally reporting symptoms and five (5) days after plaintiff's first written plea for emergency medical assistance, plaintiff was finally seen at Corrigan Medical by A.P.R.N. Yvonne Marceau.

20. During the 9/14/20 examination referenced at #19 above, Defendant Marceau simply asked the plaintiff a few basic health related questions, determined within two (2) to three (3) minutes that the plaintiff was "fine" and told the plaintiff to return to his housing unit.

21. During the plaintiff's brief encounter with Defendant Marceau described at #20 above, Defendant Marceau appeared bored, disinterested and somewhat perturbed that the plaintiff was "wasting her time".

22. As the plaintiff was preparing to leave the Corrigan medical unit following the dismissal by Defendant Marceau described above, he (Plaintiff) was stopped by Carly Cann, R.N., who had noticed the plaintiff's obvious distress, prompting Nurse Cann to be concerned enough to essentially overrule the A.P.R.N. (Marceau) and conduct a series of medical examination tests upon the plaintiff.

23. In response to Nurse Cann's intervention AP.R.N. Marceau became incensed, making passive aggressive comments to the plaintiff and insinuating the plaintiff was "faking", leading to a running argument between the plaintiff and Marceau while Nurse Cann was attempting to provide a competent medical assessment of the plaintiff.

24. As Defendant Marceau continued to instigate an argument with the plaintiff, the plaintiff's vision began to fade and as he could feel the effects on his blood pressure from the persistent berating coming from Marceau, he (Plaintiff) began feeling dizzy.

25. Following a very brief examination, as described above, Nurse Cann immediately called 911, having the plaintiff rushed by ambulance to Bacchus Memorial Hospital in Norwich Connecticut.

26. Upon arrival at Bacchus Memorial the plaintiff was sent for an emergency CT Scan, which revealed a severe and life-threatening brain bleed.

27. The brain bleed referenced above at #26 was so severe the plaintiff was flown by LifeStar helicopter from Bacchus Memorial to Hartford Hospital for emergency brain surgery.

28. At one point during the transport from Bacchus Memorial to Hartford Hospital, prior to surgery, the plaintiff clinically died and had to be resuscitated using heroic measures.

29. Subsequent to the initial brain surgery of 9/24/20 described above, the plaintiff was sent to a second surgery on or about September 29, 2020 due to continued bleeding of his brain.

30. During the second surgery described at # 29 above, the plaintiff had another clinical death, requiring resuscitation once again utilizing heroic measures.

31. The name of the plaintiff's nuerosurgoen at Hartford Hospital is Mohamad Khaled, M.D.

32. Subsequent to the surgeries referenced above Dr. Khaled has conducted several post-op follow up examinations with the plaintiff, monitoring progress, ordering tests and attempting to order a treatment regimine to help alleviate some of the pain and side effects the plaintiff continues to experience due to the anuerism and the surgeries associated therewith.

33. Upon post-op exam it was determined by Doctor Khaled that the plaintiff was having issues with balance and walking as a result of the anuerism.

34. Doctor Khaled ordered physical therapy for the plaintiff, and sent his (Dr.Khaled) recommendation to Doctro Feder at Corrigan, explaining that said therapy would be necessary to help the plaintiff regain balance and maintain a steady gait.

35. In response to the order for physical therapy referenced above, Doctor Feder, a family practice doctor with no public history of surgical or nuero-science background, informed the plaintiff that physical therapy is not available at Corrigan and that no accommodation would be made.

36. As a result of the anuerism and/or the resulting surgeries, the plaintiff now slurs his speech.

37. In consulting with Doctor Khaled it was suggested that the plaintiff needs speech therapy to regain (if possible) muscle control and hopefully correct said speech impediment.

38. In response to the plaintiff's request for speech therapy, which was submitted in writing to Doctor Feder, the plaintiff was told that correcting slurred speech is not considered by the CTDOC to be "medically necessary", pursuant to recent medical policies instituted by Defendant Quiros when the CTDOC took control of the medical department from the University of Connecticut, and therefor speech therapy would not even be considered for the plaintiff.

39. To date, with the exception of **some** of the tests ordered by Doctor Khaled, all of the orders for post-operative treatment of the plaintiff have been ignored or denied by Defendant Feder without any apparent reasoning other than to say "Doctor Khaled can't order anything, only recommend", leaving the plaintff to stagnate at best and deteriorate at worst.

40. Under the recent policy instituted by Defendant Quiros, experts in a specific field, like Doctor Khaled, have no actual authority to make medical orders for their CTDOC patients and instead allows CTDOC (medical and custody) to override medical "recommendations" for CTDOC patients, whether the deciding authority actually has knowledge in that particular field or not.

41. Commissioner Quiros has no public history in medicine and no known expertise in the field of nuerosurgery, physical therapy, speech therapy or cognitive therapy.

42. Doctor Feder knew or should have known that each CTDOC facility was required, per policy, to employ the "Prompt Care" system described above.

**43.** Commissioner Quiros knew or should have known that the "Prompt Care" system, instituted under his direction and authority, was not being implemented at Corrigan and that, as the Prompt Care system was put in place in response to serious and well publicized incidents of disastrous delays in medical treatment of CTDOC prisoners, Corrigan's refusal to employ the Prompt Care system was likely to lead to similar, disastrous events.

**44.** There is a mantra in medicine, often heard in public interest ads by the U.S. government; "Time lost is brain lost".

**45.** As a direct result of the defendants' failures to provide timely medical care, as described throughout this Complaint, the plaintiff sat for approximately three (3) weeks with a bleeding anuerism, suffering extreme pain and damage to his brain which simply would not have occurred had the defendants followed their own CTDOC policies.

**46.** In further attempts to receive post-op medical treatment and to ask for a review of the incidents described herein to prevent future repeats, the plaintiff <u>tried</u> to get Defendant Janine Brennan, the Corrigan Medical Administrative Remedies Coordinator, to exercise her authority to remedy what could be remedied and to call for changes to prevent future injury.

**47.** Although Defendant Brennan had/has the authority as the Medical Administrative Coordinator to investigate the incidents described herein and make authoritative recommendations to prevent future harm to patients, Defendant Brennan instead chose to chastise the plaintiff for having the audacity to ask that staff be disciplined, according to CTDOC policy, for their indifference to the plaintiff's pleas for help, allowing the plaintiff to sit for three (3) weeks with a bleeding brain.

**48.** Defendant Brennan, when confronted with the fact that CTDOC policy requires implementation of the Prompt Care system, which would have prevented unnecessary injury to the plaintiff, falsely claimed "Their is no DOC policy regarding sick call slips".

**49.** As the Medical Administrative Coordinator at Corrigan, Defendant Brennan has the authority to find a policy, or the application thereof, to be contrary to CTDOC policy, law and/or medical ethics.

**50.** The stated purpose of the Medical Administrative Remedies system is provide an expeditious review and, when necessary, **CORRECT** deficiencies within said medical provision, to ensure safe, adequate medical treatment of Connecticut prisoners, in accordance with accepted community standards of care.

**51.** Defendant Brennan had/has it within her authority to find that the decision by Corrigan not to employ the Prompt Care system was violative of CTDOC policy and put the lives of Corrigan prisoners at risk, thereby requiring Corrigan defendants Martin, Phillips and Feder to implement the CTDOC Prompt Care policy.

**52.** The plaintiff sent administrative remedy claims to Defendant Brennan asking that Doctor Khaled's order for physical therapy be honored. Defendant Brennan decided not to even respond to this remedy attempt, instead telling the plaintiff verbally "that is not the purpose of the remedy system".

**53.** Defendant Brennan, as the Corrigan Medical Administrative Coordinator, has it within her authority to find that Defendant Feder's refusal to provide physical and/or speech therapy to the plaintiff is violative of policy. Such a finding would obligate Defendant Feder to come into compliance and would result in a cessation of the aforementioned delay/denial of medical care to the plaintiff in this regard.

**54.** Having been told by the defendants, as described above, that he (Plaintiff) could not seek administrative remedy review of staff conduct, employment of Prompt Care policy, or any other action sought via multiple administrative remedy filings, the plaintiff filed administrative remedies with Defendant Brennan simply asking for acknowledgement of his (Plaintiff's) attempts to exhaust said remedies.

**55.** In response to the plaintiff's multiple attempts to simply receive acknowledgement of his attempts at remedy exhaustion, Defendant Brennan stated that remedy exhaustion is not an appropriate reason to file a medical administrative remedy.

**56.** In sum: Defendant Brennan claims that seeking treatment is not an appropriate use of the remedy system; then claims seeking investigation for the lack of treatment is also not appropriate; then claims seeking discipline of those who failed to follow policy is inappropriate; and finally, claims that Administrative Remedies Forms (Which literally have a section for the CTDOC to acknowledge exhaustion of remedies) are not to be used to seek exhaustion of administrative remedies.

**57.** In responses related to the above referenced claims by Defendant Brennan, Nurse Brennan also states that, because she is neither a lawyer nor an investigator she (Brennan) is not required to investigate claims or determine illegality in the provision of medical treatment.

**58.** The actions and/or inactions of Defendant Brennan, as related to thethe incidents of this Complaint, resulted in unnecessary delay and/or denial of medical care, as the issues raised by the plaintiff in said remedy forms were issues which could have been addressed in a timely manner had Defendant Brennan properly filed, investigated and/or forwarded said remedies to the proper medical authorities.

**59.** As a result of the unnecessary delay and/or denial of medical treatment caused by the actions and/or inactions of Defendant Brennan, the plaintiff suffered and continues to suffer physical and psychological damage due to untreated serious medical conditions.

**60.** The actions and/or inactions of Defendant Brennan, as related to her repeated claims that the plaintiff was not raising issues in the aforementioned Medical Administrative Remedies upon which relief may be granted, were clearly intended to chill the plaintiff's exercise of his rights to seek redress and access to the courts.

**61.** As a result of the false and misleading statements by Defendant Brennan to the plaintiff, both in writing and verbally, claiming that the defendant could not utilize the CTDOC Medical Administrative Remedies Form to seek treatment, ask for a policy to be reviewed and/or properly enacted, ask for an investigation into staff conduct, seek discipline of staff who failed to follow CTDOC policy or even to exhaust Plaintiff's administrative remedies to gain PLRA compliance, the plaintiff spent several months going in circles with this defendant, resulting in a long delay in the plaintiff's seeking of relief from this Court, said relief including the grant of an injunction and declaration ordering the defendants to provide and continue to provide adequate medical treatment to the still suffering plaintiff.

**62.** As related to the actions and/or inactions of Nurse Brennan, as described above, the plaintiff attempted to seek review from Defendant Martin, who is the "Level I Reviewer" of all custody based administrative remedy filings at the Corrigan Correctional Center, by filing an Administrative Remedy on or about December 30, 2020.

**63.** The Administrative Remedy referred to above at #62 was an attempt by the plaintiff to get the Unit Administrator (Warden Martin) to direct his subordinates (Nurse Brennan) from usurping and circumventing the CTDOC remedy process, as described above.

**64.** After waiting fro a response for an appropriate amount of time, the plaintiff wrote a request to Defendant King, inquiring as to the whereabouts of said administrative remedy. To date the plaintiff has received no response to either the remedy or the request.

**65.** After having waited an appropriate amount of time within which to receive a response from Defendant King to the Administrative Remedy Form and subsequent request described at #62-64 above, the plaintiff sent an Inmate Request Form to Defendant Martin, seeking assistance with both the issues raised in the remedy and with locating the remedy itself. In response, Defendant Martin suggested the plaintiff re-submit said remedy, and made no mention of the fact that the remedy was in fact seeking his review of his subordinates failing to process these very same remedies.

**66.** The actions and/or inactions of Defendant King were clearly intended to chill the plaintiff's exercise of his rights to seek redress and access to the courts.

**67.** As a result of the actions and/or inactions of Defendant King the plaintiff wasted valuable time in seeking court intervention, said intervention including, but not limited to, injunctive and declaratory relief ordering the defendants to provide and continue to provide adequate medical treatment to the still suffering plaintiff.

**68.** The decision by Defendant King to refuse to even process the administrative remedy referred to above is clearly indicative of an attempt by this defendant to conceal the illicit activities of her (King's) co-workers, thereby constituting a conspiracy to deprive the plaintiff of his constitutional and statutory rights to medical care, court access and the right to seek redress.

**69.** The plaintiff has significant cognitive impairment as a result of the injuries described herein and has relied upon the assistance of other prisoners to write reuests, file the aforementioned administrative remedies and draft this Complaint.

**70.** Going forward, it is highly improbable that the plaintiff will be able to litigate this Complaint without the assistance of counsel.

**71.** To date, all attempts by the plaintiff to resolve the issues raised in this Complaint without seeking this Court's intervention have proved utterly fruitless.

**PRAYER FOR RELIEF**

**WHEREAS**, the plaintiff seeks injunctive relief, enjoining the defendants from denying previously prescribed medical treatment, such as physical, speech and/or cognitive therapy to the plaintiff without a showing of good cause before this Honorable Court.

**WHEREAS**, the plaintiff seeks a Declaratory Judgment form the Court, finding that <u>future</u> denial, delay or intentional chilling of the plaintiff's access to necessary medical care, as related to the claims raised in this Complaint, would be violative of the various Constitutional and statutory provisions relied upon herein.

**WHEREAS**, the plaintiff seeks Compensatory Damages in the amount of $250,000.00 per defendant.

**WHEREAS**, the plaintiff seeks Punitive Damages in an amount to be determined at trial.

**WHEREAS**, the plaintiff seeks any other relief as Law and Equity may allow, or as determined by this Honorable Court.

**TRIAL;   THE PLAINTIFF SEEKS A TRIAL BY JURY.**


                                        BY: THE PLAINTIFF/PRO SE


                                        _____
                                        William LaMar Burrell #430383
                                        Corrigan Correctional Center
                                        986 Norwich-New London Turnpike
                                        Uncasville, Connecticut 06382

## VERIFICATION

RE: WILLIAM LaMAR BURRELL   V.   ANGEL QUIROS, ET AL.

William LaMar Burrell, having been duly sworn, does hereby subscribe and say;

1. I am over the age of Eighteen (18) and understand the obligations of an oath and the penalties for perjury.
2. I am the plaintiff in the above captioned case.
3. I have fully and faithfully reviewed each allegation, assertion, claim and inference made in the above captioned case and find each to be accurate and honest to the best of my knowledge and belief.

_____
William LaMar Burrell

Subscribed and Sworn to Before Me This 12th Day of March, 2021, at Uncasville, Connecticut.

_____
NOTARY * PUBLIC

NOTARY PUBLIC
MICHAEL T. LYLE
My Commission Expires 10/31/2023

My Commission Expires:_____

Pg.16