UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| WILLIAM LaMAR BURRELL, | : | |
| Plaintiff, | : | No. 3:21-cv-393 (KAD) |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, et al., | : | |
| Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Plaintiff, William LaMar Burrell ("Burrell"), an Oregon-sentenced prisoner currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed a civil rights complaint *pro se* pursuant to 42 U.S.C. §§ 1983 and 1985(3) against seven defendants: Commissioner Angel Quiros, Warden Robert Martin, Dr. Ingrid Feder, APRN Yvonne Marceau, RN Kara Phillips, RN Janine Brennan, and Administrative Remedies Coordinator Michelle King. Burrell asserts federal claims for deliberate indifference to serious medical needs and interference with court access[1] as well as various state law claims. He seeks money damages and declaratory and injunctive relief.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious,

---

[1] Although Burrell identifies denial of equal protection of the laws as one of his federal claims, the only equal protection claim he includes in the body of the complaint references state law. The Court therefore construes the Complaint as not including a federal equal protection claim.

that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

The incidents underlying this action occurred while Burrell was confined at Corrigan-Radgowski Correctional Center ("Corrigan"). In late August 2020, Burrell began experiencing severe headaches, lethargy, and blurred vision. Doc. No. 1 ¶ 2. On September 9, 2020, Burrell submitted an inmate request asking to see a doctor as soon as possible for his complaints of a headache lasting more than a week, eye pain, nausea, and loss of appetite. *Id.* ¶¶ 3-4. Burrell did not get an immediate response and submitted a second request the next day. *Id.* ¶ 5.

In accordance with prison rules, both requests were deposited in the medical box in the housing unit and should have been retrieved each day. *Id.* ¶¶ 6-7. To date, Burrell has not received a response to his September 9, 2020 request. *Id.* ¶ 8. In response to his September 10, 2020 request, however, he was told his name had been added to the RN sick call list. *Id.* ¶ 9.

The Department of Correction implemented a Prompt Care system to enable inmates to have their medical needs address within 24 hours of signing up to be seen. *Id.* ¶¶ 11-12. Burrell believes that all correctional facilities except Corrigan utilize a Prompt Care system. *Id.* ¶¶ 10, 13. When Burrell asked Nurse Phillips why Corrigan did not have the Prompt Care system, she said the facility did not have sufficient staff. *Id.* ¶ 14.

APRN Marceau saw Burrell on September 14, 2020, five days after his first request. *Id.* ¶ 19. She asked him some basic questions, concluded he was fine, and sent him back to his housing unit. *Id.* ¶ 20. As he was leaving, Nurse Cann noticed his distress and conducted some medical tests. *Id.* ¶ 22. While Nurse Cann was attempting to examine Burrell, APRN Marceau made comments suggesting that Burrell was faking and they engaged in a "running argument." *Id.* ¶ 23. As they argued, Burrell's vision began to fade and he began to feel dizzy. *Id.* ¶ 24.

After her brief examination, Nurse Cann called 911 and Burrell was taken to the Bacchus Memorial Hospital by ambulance. *Id.* ¶ 25. At the hospital, Burrell underwent a CT scan which revealed a brain bleed. *Id.* ¶ 26. Burrell was taken by LifeStar helicopter to Hartford Hospital for emergency brain surgery. *Id.* ¶ 27. En route, Burrell expired and had to be resuscitated. *Id.* ¶ 28.

Burrell had his first surgery on September 24, 2020, and a second surgery on September 29, 2020 to address continued bleeding. *Id.* ¶ 29. During the second surgery, Burrell again had to be resuscitated. *Id.* ¶ 30.

Following surgery, Burrell's neurosurgeon attempted to implement a treatment regimen to address the pain and side effects of Burrell's brain aneurysm. *Id.* ¶ 32. The neurosurgeon determined that Burrell was having issues with balance and walking. *Id.* ¶ 33. The

neurosurgeon sent an order/recommendation for physical therapy to Dr. Feder at Corrigan. *Id.* ¶ 34.  Dr. Feder told Burrell that physical therapy was not available at Corrigan and no accommodation would be made.  *Id.* ¶ 35.

As a result of the aneurysm and surgeries, Burrell now slurs his speech.  *Id.* ¶ 36.  The neurosurgeon recommended speech therapy to regain muscle control and correct the speech impediment.  *Id.* ¶ 37.  When Burrell submitted a request for speech therapy to Dr. Feder, he was told that correcting slurred speech is not medically necessary and speech therapy would not be considered.  *Id.* ¶ 38.  Dr. Feder has ignored or denied all the neurosurgeon's recommendations for post-operative treatment except for some tests, stating that the neurosurgeon can only recommend, not order, treatment.  *Id.* ¶ 39.

Burrell asked defendant Brennan to investigate the incident and implement changes.  *Id.* ¶¶ 46-47.  Rather than doing so, defendant Brennan chastised him for asking that staff be disciplined.  *Id.* ¶ 47.  In response to his request regarding the absence of the mandatory Prompt Care system at Corrigan, defendant Brennan stated that there was no correctional policy regarding sick call slips.  *Id.* ¶ 48.  Burrell contends that, as Administrative Remedies Coordinator, defendant Brennan had the ability to declare a facility practice to be contrary to correctional policy or medical ethics.  *Id.* ¶ 49.

When Burrell submitted an administrative remedy to obtain the recommended treatments, defendant Brennan refused to respond and told Burrell that was not the purpose of the administrative remedy system.  *Id.* ¶ 52.  Burrell contends that, if defendant Brennan granted his administrative remedy, Dr. Feder would be required to provide the requested treatment.  *Id.* ¶ 53.

Burrell filed a grievance seeking to have Warden Martin order defendant Brennan

properly consider his administrative remedies. *Id.* ¶¶ 62-63. After waiting for the response time to expire, Burrell wrote to defendant King but has received no response. *Id.* ¶ 64. Burrell submitted a request to Warden Martin asking assistance in locating the grievance and addressing the issues contained in the grievance. *Id.* ¶ 65. Warden Martin instructed Burrell to refile his grievance. *Id.*

**Discussion**

Burrell asserts the following federal claims: Commissioner Quiros knew or should have known of the systemic failure of the medical care program at Corrigan but did nothing to address it in violation of the Eighth Amendment; Warden Martin failed to ensure that the Prompt Care system was implemented at Corrigan in violation of the Eighth Amendment; Dr. Feder was deliberately indifferent to his medical need by refusing to implement the neurosurgeon's recommendations in violation of the Eighth Amendment and stating that she would make it difficult for Burrell to pursue his claims in court in violation of the First and Fourteenth Amendments; APRN Marceau was deliberately indifferent to his medical need by failing to provide even an initial examination and failing to implement the recommended physical therapy in violation of the Eighth Amendment; Nurse Phillips failed to implement the Prompt Care system at Corrigan in violation of the Eighth Amendment; Nurse Brennan and Administrative Remedies Coordinator King chilled his right to seek medical treatment in violation of the Eighth Amendment and his ability to seek redress of grievances in the courts in violation of the First and Fourteenth Amendments by failing to address his administrative remedies; and finally, all defendants conspired to deprive him of the above federal rights in violation of 42 U.S.C. § 1985(c)(3).

5

Burrell also includes state law claims for malpractice against Dr. Feder, failure to comply with Conn. Gen. Stat. § 20-12f against APRN Marceau, failure to comply with Conn. Gen. Stat. § 20-99(b)(7) against Nurses Phillips and Brennan, denial of equal protection in violation of Article first, section 20 of the Connecticut Constitution against all defendants, and negligence against all defendants.[2]

**Deliberate Indifference to Medical Needs**

Burrell contends that Dr. Feder and APRN Marceau were deliberately indifferent to his serious medical needs. The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Id.* The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death,

---

[2] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to make a prompt initial screening to determine whether the lawsuit may proceed in federal court against any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment if that defendant believes the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

degeneration, or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The defendants also must have been "subjectively reckless."  *Spavone*, 719 F.3d at 138.  They must have been actually aware of a substantial risk that Henderson would suffer serious harm as a result of their actions or inactions.  The defendants "need only be aware of the risk of harm, not intend harm.  And awareness may be proven 'from the very fact that the risk was obvious.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See Salahuddin*, 467 F.3d at 279-80.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.  Nor does a disagreement over the treatment provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment …. [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Burrell suffered a brain aneurysm that required immediate surgery.  Thus, he had a serious medical need at the time he was examined by APRN Marceau.  *See, Ramirez-Garcia v. Ryan*, No. CV-12-2678-PHX-RCB, 2013 WL 5890734, at *2 (D. Ariz. Nov. 4, 2013) (assuming without discussion that inmate's "severe headaches," "repetitive vomiting," and subsequent aneurysm were sufficiently serious medical needs for purposes of initial screening).  Following

7

surgery, the neurosurgeon recommended therapy to address balance and walking as well as speech issues. Courts also have held that the failure to provide physical therapy after surgery may constitute a serious medical need. *See, e.g., Eason v. Quinn*, No. 3:19-cv-219(VAB), 2020 WL 3129457, at *9 (D. Conn. June 12, 2020) (construed favorably to plaintiff, allegations support serious medical need for range of motion therapy following knee surgery); *Redd v. Garell*, No. 18 CV 9436 (VB), 2020 WL 1189491, at *6 (S.D.N.Y. Mar. 12, 2020) (six-month delay in providing physical therapy recommended by surgeon following spinal surgery was objectively serious deprivation). For purposes of initial review, the court assumes that Burrell had a serious condition requiring physical and speech therapy following the two brain surgeries.

Burrell alleges that APRN Marceau only asked a few questions and dismissed him as "faking." However, he alleges that his condition was so obviously that a passing nurse performed a quick examination and had him transported to the hospital by ambulance. These allegations support an inference that APRN Marceau was aware of the risk of harm but chose to ignore it. The deliberate indifference claim will proceed against APRN Marceau for further development of the record.

Burrell alleges that Dr. Feder and APRN Marceau knew of the recommendations for physical and speech therapy but refused to follow them. He alleges that Dr. Feder told him she did not have to provide the therapy as outside doctors could only make recommendations, not order treatment. The court considers these allegations sufficient to satisfy the subjective component of the deliberate indifference test for purposes of initial review. This Eighth Amendment deliberate indifference claim against Dr. Feder and APRN Marceau for failure to provide the recommended therapy also will proceed.

8

**Commissioner Quiros, Warden Martin, and Nurse Phillips**

Burrell contends that Commissioner Quiros knew or should have known about the inadequate medical care at Corrigan but failed to address it and Warden Martin and Nurse Phillips failed to ensure that the Prompt Care system was implemented at Corrigan. Commissioner Quiros, Warden Martin, and Nurse Phillips, who Burrell has named as Nursing Supervisor, are all supervisory officials.

The Second Circuit has recently clarified the standard to be applied to a claim of supervisory liability, *Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020), by specifically adopting the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

To support his Eighth Amendment claims, Burrell must show that each defendant "personally knew of and disregarded an excessive risk" to his health by failing to ensure that the Prompt Care system was in place at Corrigan. *Id.* at 619 (citations and internal quotation marks omitted). Regarding Commissioner Quiros, Burrell alleges:

> [t]hat the pattern of deliberate indifference to the serious medical needs of Connecticut state prisoners, especially at the Corrigan Correctional Center ..., are so widespread and systemic that the only plausible explanation for this ongoing indifference is the tacit approval of the Commissioner of Correction, who, evidence will show, has been put on notice many times of the disaster that is Corrigan medical services, and has made an informed decision to allow this systemic indifference to continue.

Doc. No. 1 at 2, Section 1.A. Burrell alleges that Warden Martin should have known and Nursing Supervisor Phillips knew that the Prompt Care system was not in use at

9

Corrigan.  *Id.* ¶¶ 14-16.

In a similar case, *Weis v. Lamont*, No. 3:20-cv-1753(JAM), 2021 WL 171042 (D. Conn. Jan. 19, 2021), the plaintiff-prisoner challenged the adequacy of the prison medical care system. The court noted that the prisoner did not allege facts showing that the commissioner or wardens were "aware of the alleged deficiencies in DOC's medical care system that resulted in [the plaintiff's] delay in treatment, nor does [the plaintiff] allege any facts to demonstrate that these defendants failed to provide an adequate medical care system beyond conclusory allegations." *Id.* at *5.  The court stated that, to prevail on a supervisory liability claim, the prisoner was required to plead and prove that each defendant had subjective knowledge of, and disregarded, a substantial risk of serious harm to the plaintiff himself, not prisoners in general.  However, the court noted, the plaintiff had not alleged that any of the defendants was aware of his serious medical condition and therefore dismissed the supervisory liability claims.  *Id.*

As in *Weis*, Burrell provides only conclusory allegations that the commissioner knew of the general issues regarding medical care at Corrigan.  He alleges no facts suggesting that any of these defendants knew about his medical need or that his specific medical needs were not being addressed because the Prompt Care system had not been implemented or for any other reason. As conclusory allegations are insufficient to support a plausible claim for relief,  *Iqbal*, 556 U.S. at 678, Burrell's claims for supervisory liability are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Access to Courts and Administrative Remedy Procedures**

Burrell alleges that Dr. Feder told him that she would make it difficult for him to pursue his claims in court and Nurse Brennan and Administrative Remedies Coordinator King chilled

10

his ability to seek redress of grievances in the courts by failing to properly process his administrative remedies. To state a claim for violation of his right of access to the courts, Burrell must show that the defendant acted deliberately and maliciously and that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996). To constitute an actual injury, the defendant's action must have hindered the prisoner's efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *Monsky v. Morahan*, 127 F.3d 243, 247 (2d Cir. 2002).

Burrell alleges only that Dr. Feder made a statement. And it is apparent that she did not interfere with or prevent his filing of this action. Thus, Burrell has not identified an actual injury to support an access to courts claim against Dr. Feder.

Burrell also alleges that defendants Brennan and King denied him proper access to the administrative remedy procedures. In addition, he alleges that Warden Martin told him to refile a grievance to which he did not receive a response. Utilization of a prison grievance or administrative remedy system is not protected by the First Amendment right to petition the government for redress of grievances. *See Johnson v. Barney*, No. 04-CV-10204, 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right of meaningful access to the courts is clearly protected by the First Amendment right to petition the government, ... the same cannot be said for a prison grievance system [since] the prisoner ha[s] other avenues available to raise his claims such as his right to seek meaningful relief in court." (citation omitted)), *aff'd*, 360 F. App'x 199 (2d Cir. 2010); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (right of access to courts not compromised by prison's refusal to entertain a grievance).

Indeed, although the Prison Litigation Reform Act requires prisoners to exhaust available

11

administrative remedies before filing a federal lawsuit relating to prison conditions, 42 U.S.C. § 1997e(a), this requirement does not apply if administrative remedies are, in fact, unavailable or if the prisoner has been wrongfully prevented from utilizing the administrative remedy procedure. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).  Thus, even if they frustrated Burrell's efforts to utilize the grievance process, defendants Martin, Brennan and King have not interfered with his ability to file this action.

Nor is the lack of a response to his grievance or an unsatisfactory response cognizable under federal law.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  The claims against defendants Martin, King and Brennan arising out of the administrative remedies process are dismissed.

**Conspiracy**

Burrell contends that all defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(c)(3).  Under the intracorporate conspiracy doctrine, the officers, employees, and agents of a single corporate entity are legally incapable of conspiring together.  *See Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under 42 U.S.C. § 1985). Burrell asserts his conspiracy claim under section 1985.  Thus, the intracorporate conspiracy doctrine applies to and would bar this claim absent an exception to the doctrine, as discussed

below.³

As indicated, there is an exception to the intracorporate conspiracy doctrine. To satisfy this exception, Burrell must show that the defendants were "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). A mere allegation that the defendants had personal bias against plaintiff is insufficient to satisfy the exception. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that prisoner must do more than allege that defendants were motivated by personal bias against him to show that defendants were pursuing personal interests wholly separate and apart from the entity); *see also Harris v. City of Newburgh*, 2017 WL 4334141, at *8 (S.D.N.Y. Sept. 27, 2017) (for exception to apply, plaintiff must plausibly allege that defendants "acted other than in the normal course of their corporate duties"). Burrell alleges no facts suggesting that any defendant was acting other than in the normal course of their duties throughout his medical care or treatment. Indeed, to the contrary, the allegations are clear that each defendant was acting within the scope of and pursuant to their employment responsibilities. Thus, the exception does not apply and any conspiracy claim is barred by the intracorporate conspiracy doctrine.

**Official Capacity Damages**

---

³ Although Burrell explicitly cites section 1985, even if the court were to consider the conspiracy claim under section 1983, it is subject to dismissal. Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases., district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners. *See, e.g., Schlosser v. Walker*, No. 3:20-cv-433(WIG), 2020 WL 7324679, at *3-4 (D. Conn. Dec. 11, 2020); *Jones v. Wagner*, No. 3:20-cv-475(VAB), 2020 WL 4272002, at *5 (D. Conn. July 24, 2020); *Edwards v. Annucci*, No. 17 CV 5018(VB), 2019 WL 1284295, at *9-10 (S.D.N.Y. Mar. 20, 2019). The Court agrees with these decisions and can discern no basis upon which to distinguish section 1983 conspiracy claims from those advanced pursuant to section 1985.

Burrell seeks damages from the defendants but does not specify whether he seeks those damages in their individual or official capacities. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor has Burrell alleged any facts suggesting that the state has waived immunity in this case. Thus, all claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Orders**

All First and Fourteenth Amendment claims, all conspiracy claims and the supervisory liability claims against defendants Quiros, Martin, and Phillips are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). All claims for damages against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The case will proceed on the Eighth Amendment deliberate indifference to medical needs claims against defendants Feder and Marceau. As noted above, these defendants may address Burrell's state law claims however they deem appropriate, by motion or otherwise.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendants Feder and Marceau with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided on or before **April 23, 2021**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk

14

shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Complaint on defendants Feder and Marceau in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before **April 23, 2021** and to file a return of service on or before **May 2, 2021.**

(3)     T**he Clerk shall** send the plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **November 2, 2021**.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed by **December 2, 2021**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in

the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10)  The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)  The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of April 2021.

/s/
Kari A. Dooley
United States District Judge